Matter of Cowan (Bimbo Foods Bakeries Distrib., Inc.--Commissioner of Labor) (2018 NY Slip Op 02229)





Matter of Cowan (Bimbo Foods Bakeries Distrib., Inc.--Commissioner of Labor)


2018 NY Slip Op 02229


Decided on March 29, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 29, 2018

524951

[*1]In the Matter of the Claim of WALTER O. COWAN, Respondent. BIMBO FOODS BAKERIES DISTRIBUTION, INC., Appellant. COMMISSIONER OF LABOR, Respondent.

Calendar Date: February 15, 2018

Before: Garry, P.J., Devine, Mulvey and Aarons, JJ.


Kasowitz, Benson, Torres LLP, New York City (James J. Stricker of counsel), for appellant.
Bruce Evans Knoll, Albany, for Walter O. Cowan, respondent.
Eric T. Schneiderman, Attorney General, Albany (Mary Hughes of counsel), for Commissioner of Labor, respondent.


Devine, J.

MEMORANDUM AND ORDER
Appeals from two decisions of the Unemployment Insurance Appeal Board, filed July 14, 2016, which ruled, among other things, that Bimbo Foods Bakeries Distribution, Inc. was liable for unemployment insurance contributions on remuneration paid to claimant and those similarly situated.
Bimbo Foods Bakeries Distribution, Inc. (hereinafter the company) produces and distributes fresh baked goods under a variety of names and labels to chain stores and restaurants. Claimant entered into a distribution agreement with the company's predecessor in interest and purchased the rights to deliver those products in a specified geographic area. After claimant ceased delivering for the company and sought a determination regarding unemployment insurance benefit coverage, the Department of Labor determined that claimant was an employee of the company and found it liable for additional unemployment insurance contributions. The company disputed the finding, asserting that claimant was an independent contractor. Following a hearing, the Unemployment Insurance Appeal Board ultimately found that an employer-[*2]employee relationship existed and sustained the initial determination assessing additional unemployment insurance contributions on remuneration paid to claimant and other similarly situated individuals. The company appeals.
"Whether an employment relationship exists within the meaning of the unemployment insurance law is a question of fact, no one factor is determinative and the determination of the . . . [B]oard, if supported by substantial evidence on the record as a whole, is beyond further judicial review even though there is evidence in the record that would have supported a contrary conclusion" (Matter of Concourse Ophthalmology Assoc. [Roberts], 60 NY2d 734, 736 [1983] [citations omitted]; see Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d 433, 437 [2010]). "An employer-employee relationship exists when the evidence demonstrates that the [purported] employer exercises control over the results produced by claimant or the means used to achieve the results" (Matter of Hertz Corp. [Commissioner of Labor], 2 NY3d 733, 735 [2004] [citation omitted]). The control over the means employed is the more important factor to be considered (see Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d at 437; Matter of Ted Is Back Corp. [Roberts], 64 NY2d 725, 726 [1984]). "All aspects of the arrangement must be examined to determine whether the degree of control and direction reserved to the [purported] employer establishes an employment relationship" (Matter of Villa Maria Inst. of Music [Ross], 54 NY2d 691, 692 [1981] [citations omitted]).
Initially, we are unpersuaded by the company's contention that the Board erred in determining that claimant was an employee as a matter of law pursuant to Labor Law § 511 (1) (b). Labor Law § 511 (1) (b) defines "[e]mployment" for unemployment insurance purposes to include "any service by a person for an employer . . . as an agent-driver or commission-driver engaged in distributing . . . bakery products." According to the company, claimant did not earn a commission but earned revenue upon selling the bakery products that he purchased at prices set by him. The record, however, supports the Board's finding that the actual relationship between the parties did not constitute that of a buyer and seller. No money was exchanged in connection with claimant's alleged purchases and, pursuant to the terms of the distribution agreement, he was credited for returned stale products. Further, any hypothetical change in pricing negotiated by claimant with customers would only have resulted in a smaller commission as calculated by a set percentage. The company also asserts that the remuneration earned by claimant was not a "commission" as defined in Labor Law § 191-a (a), but overlooks that said definition is limited to issues relating to the payment of wages under Labor Law article 6 (see Klepner v Codata Corp., 139 Misc 2d 382, 385 [1988], affd 150 AD2d 994 [1989]). In view of the foregoing, substantial evidence supports the Board's finding that claimant earned a commission and qualified as an employee under Labor Law § 511 (1) (b).
Additionally, we find that substantial evidence supports the Board's finding that the company exercised sufficient supervision, direction and control over claimant to establish an employer-employee relationship under common-law principles. The company retained numerous rights under the distribution agreement, including the right to set the price of the products sold to claimant and the right to negotiate with chain outlets to determine price and terms of sale, and it retained the authority to sell distribution rights purchased by claimant or perform his delivery obligations under certain circumstances. Claimant was further required to deliver fresh products and remove stale products in a defined area, sell any additional products provided by the company, cooperate with its marketing programs, remit settlement information to it each week, maintain certain chain outlet customers even if not profitable to him and not engage in any business activity that directly competed with the company or interfered with his obligations under the distribution agreement. In addition, claimant was interviewed by the company, relied on [*3]certain equipment and supplies provided by it, was paid on a weekly basis and was trained, instructed, supervised and monitored by a company manager regarding his deliveries. Considering the foregoing, we find no reason to disturb the Board's finding that the company exercised sufficient control over claimant and those similarly situated to establish an employer-employee relationship, despite evidence in the record that could support a contrary conclusion (see Matter of Mastroianni Bros., Inc. [Commissioner of Labor], 130 AD3d 1117, 1119 [2015]; Matter of Francis [West Sanitation Servs.-Sweeney], 246 AD2d 751, 752 [1998], lvs dismissed 92 NY2d 886 [1998], 93 NY2d 833 [1999]; Matter of Pepsi Cola Buffalo Bottling Corp. [Hartnett], 144 AD2d 220, 222 [1988]; Matter of Oakes [Stroehman Bakeries-Roberts], 137 AD2d 927, 928 [1988]).
Garry, P.J., Mulvey and Aarons, JJ., concur.
ORDERED that the decisions are affirmed, without costs.